## STETSON & POST LUMBER CO. v. COMMERCIAL SASH & DOOR CO. *

(Circuit Court of Appeals, Ninth Circuit.   June 27, 1924.)

No. 4191.

1. **Sales ⬅22(3)—Memorandum of prices issued by seller construed.**

If memorandum of prices was issued by seller merely as basis for future negotiations, and was not signed by buyer, minds of parties have not met, and seller was not liable thereon; but if it was issued as basis for orders during certain period, seller would be liable for refusing to fill orders thereunder.

2. **Sales ⬅418(2)—Buyer's measure of damages, on seller's refusal to deliver, stated.**

On seller's breach of contract by refusing delivery, buyer's measure of damages is difference between market price and contract price of same kind of goods on day shipment should have been made.

3. **Sales ⬅22(3)—If minds of buyer and seller did not meet, there was no sale.**

If minds of buyer and seller did not meet on kinds of lumber, there was no contract of sale.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Action by the Stetson & Post Lumber Company against the Commercial Sash & Door Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The defendant in error, Commercial Sash & Door Company, of Pittsburgh, Pa., brought this action against the Stetson & Post Lumber Company, of Seattle, Wash., to recover damages for an alleged breach of an alleged contract for the sale of certain lumber—the complaint alleging, in substance, that on or about October 29, 1919, the defendant to the action agreed to sell to the plaintiff at least eight mixed cars of lumber of specified kinds at a specified price for each kind, said offer to remain open at the prices stated until the succeeding March 1, limiting the offer only by specifying, "Moulding subject to our ability to get out at 40¢ per inch per 100 ft.;" that the offer was immediately orally accepted by the plaintiff, through its agent, one Rabe, whereupon the defendant to the action made and delivered to Rabe a written memorandum thereof, signed by its general manager, a copy of which is Exhibit A hereinafter inserted; that on November 5, 1919, the plaintiff confirmed its oral acceptance in writing, and in that instrument gave a detailed order for the first of the eight cars, which order is Exhibit B hereinafter inserted; that on or about November 25, 1919, and on December 3, 1919, the plaintiff in the action mailed to the defendant thereto similar orders for the second and third cars, none of which were filled, and on or about December 9, 1919, the said defendant by wire repudiated the contract, stating that it would not fill the same or any other such orders, and returned the said order with a letter of same date, claiming that it only offered to sell six and eight inch base. Thereupon the plaintiff in the action, while asserting its right to have mixed cars, asked the defendant to ship cars of casing and base, and later, on January 14, 1920, demanded a car of six and eight inch base, but that the defendant would not and did not ship to the plaintiff any lumber whatever.

Exhibits A and B are as follows:

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied August 4, 1924.

Exhibit A.

"Order Date 10/29/19.

"Customer's Order No.————. Route.
"Sold to Commercial Sash & Door Co., Address—Pittsburgh Pa. Stetson &
Post Lumber Co., Owner. Deliver or ship to—Advise.

|  | | Price |
|---|---|---|
| 5/8x8 B N Base, #2 and better mixed grain | | 47 |
| 5/8x6 B N Base      "            " | | 45 |
| 1  x5 B N Casg.   (stool and apron 4/4 stock) | | 45 |
| 1  x4 B N Casg.   (5/4 stock, add 2.00) | | 45 |
| 1  x4 Crown Med.     "            " | | 45 |
| 1  x4  S  4  finish    "     .      " | | 43 |
| 1  x6  "          "            " | | 44 |
| 1  x5–8 and 10 "     "            " | | 47 |
| 1  x12          "     "            " | | 48 |

1–1/4 and 1–1/2x4" & 6" S G D4S finish #2 and better mixed grain ..... 46
1–1/4 and 1–2x5"–8", 10" and 12" SG D4 S finish #2 and better mixed
grain ........................................................................... 48
1–1/4 and 1–1/2x8 to 12' stepping B N V G #2 and better mixed grain .. 60

"For each inch over 12" in finish add 1.00 per M.. This is practically clear
Highest grade Made.
"For mixed orders. Price to stand to March 1st, not to exceed 8 cars. All
f. o. b. mill prices.                                                    Kehrer.
"All kiln dried.
"Mouldings subject to our ability to get out at 40¢ per inch per 100 S. Ft."

Exhibit B.

"Commercial Sash & Door Co., 33d Street and Liberty Avenue,

"Pittsburgh, Pa. November 5, 1919.
"Order No. G–2804.                              O. K.  Geo.
"Stetson & Post Lumber Co., Seattle, Wash.: Please ship the following
goods via Penna. Railroad. Delivery to us at 33d St., Denny Siding, Pittsburgh
Pa. Ship in January, 1920. This is first car applying on 8 car contract.

7,000 ft. lin. 5/8x7–1/4 base our #28–1/2 count 1x8 at $47.00 per M. ft. B. M.
10,000 ft. lin. 5/8x5–1/2 base our #28–1/2 count 1x6 at $45.00 per M. ft. B. M.
36,000 ft. lin. 3/4x4–1/2 casing our #10 count 1x5 at $45.00 per M. ft. B. M.
15,000 ft. lin. 3/4x3–1/2 casing our #10 count 1x4 at $45.00 per M. ft. B. M.
15,000 ft. lin. 3/4x3–3/4 Crown Mo. our #62 count 1x4 at $45.00 per M.
ft. B. M.
"All above sizes are finished sizes. All #2 and better soft old growth yel-
low fir, kiln dried, which we understand is practically clear. Lengths of each
item are to be an equal proportion of 10, 12, 14 and 16'.
"A very small proportion of 8/0 will be acceptable. We prefer not to have
anything longer than 16/0, because our bins will not permit of longer lengths.
Put 5 pcs., same length, size, and design, in each bundle. All bundles tied
at each end with strong untarred rope.
"Are inclosing blueprints details of our mouldings. If our order shows
sizes different than specified on our blueprint, be guided by the finish sizes
specified in our order.
"All prices f. o. b. mill. Terms—2 per cent. for cash upon unloading and
checking goods. Acknowledge receipt of orders.
"Order number must appear on invoices.
"Commercial Sash & Door Co.,
"Per P. H. Schweizer."

By its answer the defendant put in issue all of the allegations of the
complaint. There was a verdict of the jury in favor of the plaintiff in the
sum of $1,320, and a subsequent motion by the defendant for the entry of a
judgment in its favor notwithstanding the verdict, on the ground that it was
contrary to the evidence and contrary to law, which motion was denied by
the court, and judgment rendered for the plaintiff.

Tucker, Hyland & Elvidge, of Seattle, Wash. (S. H. Steele, of Seattle, Wash., of counsel), for plaintiff in error.

Ira Bronson, J. S. Robinson, and H. B. Jones, all of Seattle, Wash., for defendant in error.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). The record shows that, in the negotiations between the parties, the witness Rabe represented the Sash & Door Company, and the witness Kehrer the Lumber Company. Rabe testified, among other things, that Exhibit A was written in triplicate, upon the original of which he wrote: "Accepted: Commercial Sash & Door Company, by A. K. Rabe." Kehrer testified, among other things, that Exhibit A was not so signed, and that no contract was entered into between the parties. "That," said the court below in its instructions to the jury, "is where the marked difference is between the parties—and which you must determine from all the testimony presented—whether the memorandum that was issued by the defendant, admittedly giving a statement of prices for certain materials, was used for the purpose of a basis for future orders and contracts, or whether it was merely advisory to the representative of the plaintiff company for the purpose of its consideration, and that the understanding was that he return to the office of the defendant, and then, if agreeable, sign it, so that there would be a mutual agreement between the parties, one to sell and the other to buy. If that was the understanding when this memorandum, Exhibit 1—A—well, this memorandum of prices and materials, if that was the understanding, then the plaintiff had no right to issue any orders to the defendant and expect fulfillment, because there had been no meeting of the minds between the two parties. They had not come to any agreement." On the other hand, said the court, in effect, in its instructions, if Exhibit A was accepted by the plaintiff company as testified by Rabe, or if that exhibit was issued by the defendant company as a basis for future orders by the plaintiff up to the succeeding March 1, unless the offer was sooner recalled, then there was an agreement of minds between the parties, which had the effect subsequently explained by the court.

[1-3] The record shows that the offer was recalled December 9th. In the meantime three cars had been ordered, with which cars only, the court told the jury, it was concerned, adding:

"And you will determine, from all of the testimony in the case and the circumstances detailed here, what the fact is as to the relation between the parties and this list of materials and the prices thereto. If you find that this price list was issued simply for an advisory purpose, and for consideration by the plaintiff, and that a further conference was to be held with relation to it, and, if satisfactory, signed by the plaintiff, and that it was not so signed, then you will return a verdict in this case in favor of the defendant. On the other hand, if you find that the memorandum of prices was—whether signed or not—was issued as a basis for orders, and to have effect and force until the 1st of March, then the defendant would be liable for the damages to plaintiff which it sustains, which would be the difference between the market price of the lumber, between the price agreed to be paid therefor and the market price of the same lumber on the day that it was contemplated by the contract that the lumber should be shipped to the plaintiff. In this connection you are in-

structed, however, that if there was a difference in the minds of the parties as to * * * the base or size for molding or casing contemplated by the plaintiff and standards and sizes for moldings and casings contemplated by the defendant, then you are instructed that there was no meeting of the minds between the parties with relation to the moldings, and, if there was no meeting of the minds between the parties with relation to the moldings, then there would be no contract of sale, because there is no specification in the memorandum, and, if there is no standard upon which the minds could meet, then the defendant would not be in a position to fill that part of the memorandum or contract."

The court thus properly left to the jury the determination of the facts, and instructed it correctly, as we think, respecting the law applicable to the facts.

The judgment is affirmed.